IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,
    *Plaintiff*,

    v.                                 Criminal No. ELH-14-0542

ARKEENE REDDITT-ABRAMS,
    *Defendant*

## MEMORANDUM

Arkeene Redditt-Abrams, the self-represented defendant, filed correspondence docketed on May 14, 2020, which the Court has construed as a motion for compassionate release, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). ECF 194 (the "Motion"). He seeks relief from his sentence due to COVID-19 and family issues. The Federal Public Defender has not entered an appearance for the defendant. The government filed an opposition on June 29, 2020 (ECF 197) as well as an exhibit. ECF 199.

No hearing is necessary to resolve the Motion. For the reasons that follow, I shall deny the Motion.

### I.      Factual and Procedural Background

On November 18, 2014, the defendant and three others were charged in an Indictment. ECF 1. In particular, defendant was charged with the offenses of conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) (Count One); two counts of Hobbs Act robbery, under 18 U.S.C. § 1951(a) (Counts Two and Four); and three counts of brandishing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c) (Counts Three, Five, and Six).

Pursuant to a Plea Agreement (ECF 76; ECF 77), on April 9, 2015, the defendant entered a plea of guilty to Count Five.  ECF 75.  Under the Plea Agreement, the parties agreed that the government could recommend a sentence up to 141 months of imprisonment.  *Id.* ¶ 9.

The Plea Agreement contained a stipulation as to the facts.  *Id.* at 10-13.  As set forth in the Plea Agreement, the defendant conspired to rob at gunpoint several stores that sold cellphones.  During one of the robberies, the group stole 36 cell phones plus currency, totaling over $18,000 in losses for the store.

Sentencing was held on August 7, 2015.  ECF 107.  According to the Presentence Report ("PSR," ECF 94), the defendant was born in November 1989 and was 25 years old at sentencing.  *Id.* at 3.  The PSR related the defendant's participation in two armed robberies on June 17, 2014, and a third armed robbery on June 24, 2014.  However, because the defendant pleaded guilty only to Count Five, his advisory guidelines corresponded to the mandatory minimum sentence of seven years.  *Id.* ¶ 31.[1]   Defendant had a criminal history category of III.  *Id.* ¶ 37.  The Court sentenced defendant to a term of 108 months' imprisonment.  ECF 108 (Judgment).

The defendant is presently serving his sentence at the Federal Correctional Institution-McDowell in West Virginia.[2]  This facility is a medium security federal correctional institution with an adjacent minimum security satellite camp.  The defendant came into federal custody on June 4, 2015.  ECF 103 at 2.  According to the government, the defendant's projected release date is November 2022, assuming good time credit.  ECF 197 at 2.

---

[1] The offense carries a maximum penalty of life imprisonment.

[2] The Court made this determination from defendant' return address on his mailing.  I did not locate any reference to the particular institution in the government's submission or the exhibits.

2

By letter dated May 19, 2020, the defendant asked the Warden to consider him for compassionate release due to his asthma.  ECF 195; ECF 197-1.  By letter dated May 26, 2020, the Warden denied the request.  ECF 197-2.

## II.  Discussion

### A.  Statutory Background

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see Dillon v. United States*, 560 U.S. 817, 824-25 (2010); *United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson,* 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019).  But, "the rule of finality is subject to a few narrow exceptions."  *Freeman v. United States*, 564 U.S. 522, 526 (2011).  One such exception is when the modification is "expressly permitted by statute."  18 U.S.C. § 3582(c)(1)(B); *see Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, 18 U.S.C. § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence.  Section 3582 was adopted as part of the Sentencing Reform Act of 1984.  It originally permitted a court to alter a sentence only upon a motion by the Director of the BOP.  *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984).  Thus, a defendant seeking compassionate release had to rely on the BOP Director for relief.  *See*, *e.g*., *Orlansky v. FCI Miami Warden*, 754 F. App'x 862, 866-67 (11th Cir. 2018); *Jarvis v. Stansberry*, No. 2:08CV230, 2008 WL 5337908, at *1 (E.D. Va. Dec. 18, 2008) (denying  motion for compassionate release because § 3582 "vests absolute discretion" in the BOP).

However, for many years the safety valve of § 3582 languished.  The BOP rarely filed motions on an inmate's behalf.  As a result, compassionate release was exceedingly rare.  *See*

3

*Hearing on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n* 66 (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice) (observing that, on average, only 24 inmates were granted compassionate release per year between 1984 and 2013).

In December 2018, Congress significantly amended the compassionate release mechanism when it enacted the First Step Act of 2018 ("FSA").  *See* Pub. L. 115-391, 132 Stat. 5239 (2018).  As amended by the FSA, 18 U.S.C. § 3582(c)(1)(A) permits a court to reduce a defendant's term of imprisonment "upon motion of the Director of [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," whichever occurs first.  So, once a defendant has exhausted his administrative remedies, he may petition a court directly for compassionate release.

Section 3582(c) is titled "Modification of an imposed term of imprisonment."  Under § 3582(c)(1)(A), the court, upon motion of the Director of BOP or the defendant, upon exhaustion of administrative rights,  may modify the defendant's sentence if, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," it finds that

> (i) extraordinary and compelling reasons warrant such a reduction;

> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

4

Accordingly, in order to be entitled to relief under 18 U.S.C. § 3582(c)(1)(A)(i), a defendant must demonstrate that (1) "extraordinary and compelling reasons" warrant a reduction of the sentence; (2) the factors set forth in 18 U.S.C. § 3553(a) countenance a reduction; and (3) the sentence modification is "consistent" with the policy statement issued by the Sentencing Commission in U.S.S.G. § 1B1.13.

U.S.S.G. § 1B1.13 is titled "Reduction in Term of Imprisonment under 18 U.S.C. § 3582(c)(1)(A) Policy Statement." The text mirrors the statute. Application Note 1 of U.S.S.G. § 1B1.13 defines "Extraordinary and Compelling Reasons" in part as follows (emphasis added):

> 1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:[3]
>
> (A)  Medical Condition of the Defendant.—
>
>> (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>>
>> (ii) The defendant is—
>>
>>> (I) **suffering from a serious physical or medical condition**,
>>>
>>> (II) suffering from a serious functional or cognitive impairment, or
>>>
>>> (III) experiencing deteriorating physical or mental health because of the aging process,
>>
>> that **substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility** and from which he or she is not expected to recover.

---

[3] Subsection (2) of U.S.S.G. § 1B1.13 establishes as a relevant factor that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

Other extraordinary and compelling reasons include the age of the defendant (Application Note 1(B)) and Family Circumstances (Application Note 1(C)). Application Note 1(D) permits the court to reduce a sentence where, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 App. Note 1(D).

The BOP regulation appears at Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 2582 and 4205. The Guideline policy statement in U.S.S.G. § 1B1.13, along with the application notes, and BOP Program Statement 5050.50 define "extraordinary and compelling reasons" for compassionate release based on circumstances involving illness, declining health, age, exceptional family circumstances, as well as "other reasons."

The defendant, as the movant, bears the burden of establishing that he is entitled to a sentence reduction under 18 U.S.C. § 3582. *See*, *e.g.*, *United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013); *United States v. Edwards*, NKM-17-00003, 2020 WL 1650406, at *3 (W.D. Va. Apr. 2, 2020). If the defendant can show an extraordinary and compelling reason that renders him eligible for a sentence reduction, the Court must then consider the factors under 18 U.S.C. § 3553(a) to determine whether, in its discretion, a reduction of sentence is appropriate. *Dillon*, 560 U.S. at 827. But, compassionate release is a "rare" remedy. *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020); *United States v. Mangarella*, FDW-06-151, 2020 WL 1291835, at *2-3 (W.D. N.C. Mar. 16, 2020); *White v. United States*, 378 F. Supp. 3d 784, 787 (W.D. Mo. 2019).

## B.  COVID-19

Defendant filed his Motion while the nation is "in the grip of a public health crisis more severe than any seen for a hundred years." *Antietam Battlefield KOA v. Hogan*, CCB-20-1130, ___ F. Supp. 3d ___, 2020 WL 2556496, at *1 (D. Md. May 20, 2020).  That crisis is COVID-19.[4]  The World Health Organization declared COVID-19 a global pandemic on March 11, 2020. *See Seth v. McDonough*, PX-20-1028, 2020 WL 2571168, at *1 (D. Md. May 21, 2020).

The judges of this Court "have written extensively about the pandemic." *United States v. Williams*, PWG-19-134, 2020 WL 3073320, at *1 (D. Md. June 10, 2020) (collecting cases). Therefore, it is not necessary to recount in detail the "unprecedented nature and impact" of the pandemic. *Id.*

That said, the virus is highly contagious. *See Coronavirus Disease 2019 (COVID-19), How COVID-19 Spreads*, Ctrs. For Disease Control & Prevention (Apr. 2, 2020), https://bit.ly/2XoiDDh.   Moreover, although many people who are stricken with the virus experience only mild or moderate symptoms, the virus can cause severe medical problems as well as death, especially for those in "high-risk categories…." *Antietam Battlefield KOA*, 2020 WL 2556496, at *1 (citation omitted).   Unfortunately, there is currently no vaccine, cure, "or proven effective treatment" that is available. *Id.* (citation omitted).

The pandemic "has produced unparalleled and exceptional circumstances affecting every aspect of life as we have known it." *Cameron v. Bouchard*, LVP-20-10949, 2020 WL 2569868, at *1 (E.D. Mich. May 21, 2020), *stayed*, ___ Fed. App'x ___, 2020 WL 3100187 (6th Cir. June 11, 2020).  For a significant period of time, life as we have known it came to a halt.  Although

---

[4] Severe Acute Respiratory Syndrome Coronavirus 2 (SARS-CoV-2) is the cause of coronavirus disease 2019, commonly called COVID-19.  *Antietam Battlefield*, 2020 WL at 2556496, at *1 n.1 (citation omitted).

many businesses have reopened, many are subject to substantial restrictions.   And, in view of the recent resurgence of the virus, some businesses are again facing closure.

As of July 14, 2020, COVID-19 has infected about 3.4 million Americans and caused over 130,000 deaths in this country.  *See COVID-19 Dashboard*, THE JOHNS HOPKINS UNIV., https://bit.ly/2WD4XU9 (last accessed July 14, 2020).   Moreover, according to earlier information from the Centers for Disease Control and Prevention ("CDC"), certain risk factors increase the chance of severe illness.  Those risk factors initially included age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity; diabetes; liver disease; and a compromised immune system.  *See Coronavirus Disease 2019 (COVID-19), People Who Are At Risk for Severe Illness*, CTRS. FOR DISEASE CONTROL & PREVENTION (May 14, 2020), https://bit.ly/2WBcB16.

However, on June 25, 2020, to reflect the most recently available data, the CDC revised its guidance as to medical conditions that pose a higher risk of severe illness from COVID-19. Obesity, where the body mass index ("BMI") is 30 or higher, is on the list, as is Type 2 diabetes. *See People of Any Age with Underlying Medical Conditions*, CTRS. FOR DISEASE CONTROL & PREVENTION (June 25, 2020), https://bit.ly/38S4NfY.  And, the CDC created a second category for conditions that "might" present a risk for complications from COVID-19.  The list of factors that might increase the risk includes cerebrovascular disease, hypertension, pregnancy, liver disease, cystic fibrosis, neurologic conditions, a compromised immune system, smoking, and Type I diabetes.  *See id.* Moderate to severe asthma is an underlying medical condition that was moved to the new category; it is now identified as a condition that "might" put an individual at higher risk for COVID-19 complications.  *See id.*

Thus far, the only way to slow the spread of the virus is to practice "social distancing." *See Coronavirus Disease 2019 (COVID-19), How to Protect Yourself & Others*, Ctrs. For Disease Control & Prevention, https://bit.ly/3dPA8Ba (last accessed May 21, 2020). Social distancing is particularly difficult in the penal setting, however. *Seth*, 2020 WL 2571168, at *2. Prisoners have little ability to isolate themselves from the threat posed by the coronavirus. *Id.*, *see also Cameron*, 2020 WL 2569868, at *1. They are not readily able to secure safety products on their own to protect themselves, such as masks and hand sanitizers. Consequently, correctional facilities are especially vulnerable to viral outbreaks and ill-suited to stem their spread. *See Coreas v. Bounds*, TDC-20-0780, 2020 WL 1663133, at *2 (D. Md. Apr. 3, 2020) ("Prisons, jails, and detention centers are especially vulnerable to outbreaks of COVID-19."); *see also* Letter of 3/25/20 to Governor Hogan from approximately 15 members of Johns Hopkins faculty at the Bloomberg School of Public Health, School of Nursing, and School of Medicine (explaining that the "close quarters of jails and prisons, the inability to employ effective social distancing measures, and the many high-contact surfaces within facilities, make transmission of COVID-19 more likely");[5] *accord Brown v. Plata*, 563 U.S. 493 519-20 (2011) (referencing a medical expert's description of the overcrowded California prison system as "'breeding grounds for disease'") (citation omitted).

The Department of Justice ("DOJ") has recognized the unique risks posed to inmates and BOP employees from COVID-19. The DOJ has adopted the position that an inmate who presents with one of the risk factors identified by the CDC should be considered as having an "extraordinary and compelling reason" warranting a sentence reduction. *See* U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I).

---

[5] The Court may take judicial notice of matters of public record. *See* Fed. R. Evid. 201.

On March 23, 2020, the CDC issued guidance for the operation of penal institutions to help prevent the spread of the virus. *Seth*, 2020 WL 2571168, at *2. Notably, the BOP has implemented substantial measures to mitigate the risks to prisoners, to protect inmates from COVID-19, and to treat those who are infected. As the Third Circuit recognized in *United States v. Raia*, 954 F.3d 594, 597 (3rd Cir. 2020), the BOP has made "extensive and professional efforts to curtail the virus's spread."

Moreover, Attorney General William Barr issued a memorandum to Michael Carvajal, Director of the BOP, on March 26, 2020, instructing him to prioritize the use of home confinement for inmates at risk of complications from COVID-19. *Hallinan v. Scarantino*, 20-HC-2088-FL, 2020 WL 3105094, at *8 (E.D. N.C. June 11, 2020). Then, on March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. No. 116-136, 134 Stat. 281. In relevant part, the CARES Act authorized the Director of BOP to extend the permissible length of home confinement, subject to a finding of an emergency by the Attorney General. *See* Pub. L. No. 116-136, § 12003(b)(2). On April 3, 2020, the Attorney General issued another memorandum to Carvajal, finding "the requisite emergency . . . ." *Hallinan*, 2020 WL 3105094, at *9. Notably, the April 3 memorandum "had the effect of expanding the [BOP's] authority to grant home confinement to any inmate . . . ." *Id.*

Nevertheless, as with the country as a whole, the virus persists in penal institutions.[6] As of July 7, 2020, the BOP reported that 1,992 inmates and 160 BOP staff currently tested positive for COVID-19; 5,137 inmates and 603 staff have recovered; and 94 inmates and one staff member have died from the virus. *See* https://www.bop.gov/coronavirus/ (last accessed July 7,

---

[6] The *New York Times* has reported that cases of COVID-19 "have soared in recent weeks" at jails and prisons across the country. Timothy Williams et al., *Coronavirus cases Rise Sharply in Prisons Even as They Plateau Nationwide*, N.Y. TIMES (June 18, 2020), https://nyti.ms/37JZgH2.

2020).  With respect to FCI McDowell, where the defendant is a prisoner, there were no active

cases as of June 29, 2020.  *See* ECF 197 at 10;  https://www.bop.gov/coronavirus.

### C.  Analysis

Defendant claims that he has asthma, which puts him at a greater risk for COVID-19

complications.  ECF 197-1.  He also asserts that his grandmother has contracted COVID-19, his

brother has cancer, and his ten-year-old daughter has sickle cell anemia.  ECF 194.  He seeks to

"get home to [his] family" in this time of "critical crisis."  *Id.*

Defendant fails to identify any extraordinary and compelling reason to justify his release.

He is not seriously ill or over 65 years of age.  Although defendant alleges that he suffers from

asthma, his medical records reveal that the only ailments he has identified since 2016 are joint

pain, anxiety, and dry skin, none of which place him at increased risk of complications.  *See* ECF

197-3 at 14.   The records mention asthma only once, indicating that the condition is

"unspecified" and has been in remission since 206.  *See id.*

Redditt-Abrams also cites his family members' health conditions.  But, these conditions

do not warrant his release.  *See* U.S.S.G. § 1B1.13, Application Note 1.  For example, the record

suggests that his daughter's mother is her primary caregiver, and Redditt-Abrams gives no

information about her condition.  *See* ECF 94, ¶ 44.

Redditt-Abrams has not shown an "extraordinary and compelling reason" for release.

"Simply put, the coronavirus is not tantamount to a 'get out of jail free' card."  *United States v.*

*Williams*, PWG-13-544, 2020 WL 1434130, at *3 (D. Md. March 24, 2020).

Even if the Court determined that the defendant met one of the conditions establishing  an

extraordinary or compelling reason justifying release, the Court's analysis of the factors under 18

U.S.C. § 3553(a) readily leads the Court to conclude that release is not warranted.  This was a

very serious case, in which the defendant participated in three armed robberies.  As the government points out, ECF 197 at 12, under the sentencing scheme in effect at the time of Redditt-Abrams's guilty plea, convictions for all of the § 924(c) offenses that were charged would have carried a mandatory minimum sentence of 57 years' imprisonment (7 years for the initial conviction, plus 50 years for the two subsequent convictions).  Even after the First Step Act, the possible minimum sentence (21 years or 7 years for each conviction) remains significant.  Redditt-Abrams received a 108-months sentence.

To the extent that defendant seeks conversion of his sentence of imprisonment to a sentence of home detention, the Court cannot provide such relief.  Home detention must be sought from the BOP.  Section 3642(c) of 18 U.S.C. authorizes the transfer of an inmate from prison to home confinement.  That section specifically provides:  "The authority under this subsection may be used to place a prisoner in home confinement for the shorter of ten percent of the term of imprisonment of that prisoner or six months."  Section 12003(b)(2) of the CARES Act states that, during the COVID-19 emergency, "the Director of the Bureau [of Prisons] may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement."  But, pursuant to § 3624(c)(2), that authority is given to the BOP, not to the courts.  *See*, *e.g.*, *United States v. Williams*, JKB-15-0646, 2020 WL 1506222, at *1 (D. Md. Mar. 30, 2020).

### III.    Conclusion

For the reasons stated above, I shall deny the Motion (ECF 194), without prejudice.  An Order follows, consistent with this Memorandum.

Date:  July 15, 2020                                    /s/
                                              Ellen Lipton Hollander
                                              United States District Judge

12